**In re the Marriage of Sharon P. PETERSON, petitioner, Appellant,**

**v.**

**Darrel L. PETERSON, Respondent.**

**No. C3–86–698.**

Court of Appeals of Minnesota.

Nov. 4, 1986.

Elton A. Kuderer, Thomas A. Harder, Erickson, Zierke, Kuderer, Myster, Madsen & Wollschlager, P.A., Fairmont, for appellant.

Ronald B. Sieloff, Sieloff and Bierman, P.A., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Sharon Peterson appeals an order of the trial court declaring judgments for delinquent child support and maintenance payments were satisfied by part payment of a supersedeas bond purchased by the respondent Darrel Peterson. Sharon claims that the trial court erred because the supersedeas bond was purchased as security for Darrel's appeal regarding his obligations to pay a lump sum property settlement and convey a parcel of land to Sharon and therefore the bond proceeds should have been applied to satisfy a judgment on the lump sum property obligation.

## FACTS

Sharon Peterson and Darrel Peterson were granted a decree of marriage dissolution on October 20, 1977 which was subsequently amended four times between 1977 and August 1982. The third amended decree dated August 22, 1979, awarded Sharon $25,750 as a lump sum supplementary property settlement due by December 31, 1979.

In October 1981, Darrel appealed the trial court's third amended judgment and decree and a subsequent order which awarded certain real estate, alimony, and child support payments to Sharon. Darrel also appealed the $25,750 supplementary property settlement. Sharon requested an order from the trial court directing Darrel to file a supersedeas bond in connection with his appeal because first, Darrel had not paid Sharon the $25,750 property settlement but was appealing this portion of the decree, and second, Darrel failed to recognize Sharon's right to possess certain farm land in order to rent the property during the 1982 crop year.

By agreement of the parties Darrel purchased a bond, and although the terms of the parties' stipulation were not entered into the record, on December 10, 1981, the trial court ordered Darrel, "[p]ursuant to stipulation of the parties," to file a supersedeas bond in the amount of $40,000. Darrel purchased the bond which was payable to Sharon in the event that Darrel failed to

> pay the damages sustained by the [appellant] in consequence of the appeal and obey and satisfy the order or judgment which the District Court may give and pay the judgment or that part of the judgment which is affirmed including any damages awarded against the [respondent] upon the appeal i[f] the judgment or any part thereof is affirmed or if the appeal is dismissed.

By April 1982, Darrel had stopped making monthly alimony payments and by October 1982, he had stopped making monthly child support payments. On October 12, 1983, Darrel filed for Chapter 11 protection of the Federal Bankruptcy Courts.

In an order dated November 10, 1983, the district court held that Sharon was entitled to judgment against Darrel in the amount of $3,900 for delinquent child support and $11,400 for delinquent alimony payments. The court declined to issue an order regarding payment of either the 1979 lump sum property settlement of $25,750, or reasonable rental for property withheld from Sharon by Darrel, "during such time as this matter is controlled by proceedings pending in the Bankruptcy Court," because "the court believes * * * [it] lacks authority and jurisdiction under the laws of the

United States of America. However, the finding's [with respect to the property-related issues] remain." [1]

In December 1983, Sharon filed a complaint against Empire Fire and Marine Insurance Co. (Empire) to collect on the $40,000 supersedeas bond, alleging that Darrel was indebted to Sharon for the following items:

$25,750.00 (plus 8% interest) for the unpaid lump sum property settlement award;

$4,220.50 representing rental for cropland withheld from the appellant by the respondent;

$3,900.00 for 13 months of delinquent child support payments; and

$11,400.00 for 19 months delinquent alimony payments.

Empire tendered $15,300 to Sharon for the delinquent child support and alimony payments but withheld payment on the property-related amounts "because it believed those claims might be affected by respondent's pending bankruptcy proceedings." Sharon deposited the money in a special account pending final determination of the matter and later was granted a summary judgment against Empire for the unpaid balance.

On February 27, 1986, the trial court, on Darrel's motion ordered that the judgments of November 10, 1983, for delinquent child support ($3,900) and maintenance ($11,400) payments are "satisfied." In a memorandum, the court noted:

The bonding company issued its check in the amount of $15,300 specifically in payment of the support and maintenance judgments. The $15,300 was ultimately accepted by the [appellant] and summary judgment was granted against the bonding company for the balance due on the bond, namely, $24,700. Therefore, it appears to the Court that the $15,300 paid to the [appellant] entitles the respondent to satisfaction of the Judgments dated November 10, 1983, one in the amount of

$3,900 for the support, and the other in the amount of $11,400 for maintenance.

Sharon contends the bond should have been used to satisfy the lump sum property division and appeals.

## ISSUE

Did the trial court err in holding that $15,300 in delinquent support and maintenance obligations were satisfied by Empire's January 1984 payment of $15,300 under the terms of the 1982 supersedeas bond?

## ANALYSIS

Sharon argues that the distribution of supersedeas bond proceeds is determined by the purpose for which the bond was taken citing *Crane v. Buckley*, 203 U.S. 441, 27 S.Ct. 56, 51 L.Ed. 260 (1906), which held, inter alia, that a supersedeas bond instrument would be interpreted by examining "the attitude of the case when the bond was given." *Id.* at 447, 27 S.Ct. at 58. Sharon contends in this case that the $40,000 supersedeas bond was procured by Darrel only to ensure payment of an unpaid cash property settlement obligation and the conveyance of a parcel of real estate.

Under Minn.R.Civ.App.P. 108, a supersedeas bond may take at least four different forms and relates to (1) appeals from an order or judgment; (2) appeals from a judgment directing the payment of money; (3) appeals from a judgment directing the assignment of documents or personal property; and (4) appeals from a judgment directing the sale or delivery of possession of real property.

However, here we have the parties coming to an agreement pursuant to which Darrel would purchase a $40,000 supersedeas bond. The problem is that neither of the parties' documents or the court's files indicate what that agreement was, or how the $40,000 figure was established, even

---

1. The court found that "the Respondent was to pay the [appellant] the sum of $25,750.00 on or before December 31, 1979, with interest thereon at the rate of eight percent (8%) per annum from October 20, 1977, and Respondent is wholly delinquent in said payment."

though the court ordered the respondent to file the bond "[p]ursuant to stipulation of the parties." The language of the supersedeas bond in this case is general and all-encompassing. The "condition of the bond" is not limited only to "payment of money" or "sale or delivery of possession of real property" as the rule provides. *See* Minn. R.Civ.App.P. 108.01, subds. 3, 5. *See also Servin v. Servin*, 345 N.W.2d 754 (Minn. 1984) (the appellant was required to file a supersedeas bond under Minn.R.Civ.App.P. 108.01, subd. 5 when the appeal directed "the sale or possession of real property"). The supersedeas bond in this case provides:

NOW THEREFORE, If said appellant shall pay all costs and charges which may be awarded against him on said appeal; and shall pay the damages sustained by the petitioner in consequence of the appeal *and obey and satisfy the order or judgment* which the District Court may give and pay the judgment or that part of the judgment which is affirmed including any damages awarded against the appellant upon the appeal i[f] the judgment or any part thereof is affirmed or if the appeal is dismissed, this obligation shall become void; otherwise to be and remain in full force and effect. [Emphasis added].

The case law suggests that the terms of a bond generally will be interpreted as written because the terms purport to reflect the intentions of the parties. "A bond is a contract * * * which must be construed so as to carry out the intentions of the parties. * * * Where there is no ambiguity in the instrument, there is no room for construction by the court." *Whitehill v. Seaway Port Authority of Duluth*, 349 N.W.2d 313, 315 (Minn.Ct.App. 1984) (citing *Connell v. Bauer*, 240 Minn. 280, 295, 61 N.W.2d 177, 186 (1953); *Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975)). *In Union Sewer Pipe Co. v. Olson*, 82 Minn. 187, 84 N.W. 756 (1901), the supreme court stated:

Effect must be given to the intention of the parties, if it can be ascertained from the writing. A written instrument expressing a distinct agreement must be construed as evidencing the intention of the parties, even though it appear dehors the writing that the parties really intended to make a contract quite at variance therewith. A contract in that form cannot be corrected by construction.

*Id.* at 189, 84 N.W. at 757. In a more recent case involving the interpretation of contracts, the Minnesota Supreme Court stated that:

The objective of judicial interpretation of disputed provisions of a contract is to ascertain and give effect to the parties' intention. This, the courts, both trial and appellate in cases such as this, seek to accomplish by placing themselves in the position of the parties at the time the agreement was negotiated and executed and, upon consideration of the agreement as a whole and the plain meaning of the language used, viewed in the light of the surrounding circumstances, endeavoring to arrive at what the parties must have reasonably contemplated.

*Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (citations omitted).

As we have previously noted, the intent of the parties with respect to the supersedeas bond in this case is not clear. However, we note that when Sharon sued the bond company for payment, she claimed that Darrel had "failed to pay in accordance with the terms of the Judgment, dated December 10, 1981," and was indebted to her for nonpayment of four sums:

1. the unpaid lump sum settlement of $25,750, plus interest;

2. the sum of $4,220.54 representing rents withheld from the appellant regarding the disputed land;

3. the sum of $3,900 representing delinquent child support payments; and

4. the sum of $11,400 representing delinquent alimony payments.

Because of Darrel's pending bankruptcy proceeding, the bonding company paid only $15,300 (the sum of the delinquent child support and alimony payments) and with-

held the balance, apparently because it did not know how to deal with the property-related claims as a result of the trial court's declining to enter judgment against Darrel on the property-related claims "during such time as this matter is controlled by proceedings pending in the Bankruptcy Court."

■ Minn.R.Civ.App.P. 108.01, subd. 2 provides that, in addition to payment of costs and damages resulting from the appeal,

> the condition of the bond shall be * * * the obedience to and satisfaction of the order or judgment which the appellate court may give if the order or any part of it is affirmed or if the appeal is dismissed.

The trial court's order and judgment from which Darrel appealed was affirmed by the appellate division on July 8, 1982. Consequently, the bond company was obligated not only to pay costs and damages, but also became liable for Darrel's failure to obey and satisfy the order or judgment which the appellate court affirmed. *See Erickson v. Elder*, 34 Minn. 370, 25 N.W. 805 (1885). Since the appellate division affirmed the entirety of the trial court's order and judgment and the bond instrument appears on its face to apply not only to the property-related issues but also to the alimony and child support obligations, the bonding company was liable for Darrel's nonpayment of those obligations.

In *Schalow v. Mason*, 370 N.W.2d 475 (Minn.Ct.App.1985), *rev. denied*, (Minn. Sept. 13, 1985), this court stated:

> A trial court's findings of fact must be upheld unless "clearly erroneous." Minn.R.Civ.P. 52.01. On appeal, this court must view the evidence in the light most favorable to the prevailing party. The trial court's findings will not be reversed if the evidence fairly and reasonably tends to support them.

*Id.* at 476 (citing *Lesmeister v. Dilly*, 330 N.W.2d 95, 100 (Minn.1983); *Gordon v. Hoffman*, 303 N.W.2d 250, 252 (Minn. 1981)).

To the extent that this bond is a contract and the resolution of the issue depends upon an interpretation of the instrument, "[t]he existence and terms of a contract are questions for the factfinder when those issues are in doubt." *Swanson v. American Hardware Mutual Insurance Co.*, 359 N.W.2d 705, 708 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Mar. 6, 1985) (citing *McEwen v. State Farm Mutual Insurance*, 281 N.W.2d 843 (Minn.1979)).

■ This court must defer to the trial court in its interpretation of the terms of the supersedeas bond and we conclude that the trial court was not clearly erroneous in its findings of fact. The trial court could conclude that the supersedeas bond was procured in part to ensure Darrel's payment of support and maintenance obligations under the amended decree. The trial court also could conclude reasonably that Sharon filed her claim against the bond company to recover unpaid support and maintenance obligations, and that the $15,300 check issued by the bond company to Sharon was "specifically in payment of the support and maintenance judgments." Therefore, we find no error in the trial court's finding that the judgments of November 1983 in the amounts of $15,300 representing delinquent child support and maintenance payments are satisfied.

## DECISION

The district court's order of February 27, 1986, stating that judgments of November 10, 1983, in the amount of $15,300 presenting delinquent child support and maintenance payments are satisfied, is affirmed. The respondent's motion for attorney's fees is denied.

Affirmed.